# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

MANUEL CHAVOUS,

     Plaintiff,

v.                           Case No: 8:20-cv-1614-KKM-JSS

CITY OF SAINT PETERSBURG,

     Defendant.

_____

## ORDER

Plaintiff Manuel Chavous filed a Complaint alleging that the City of Saint Petersburg suspended and terminated him in violation of federal and Florida employment law. The City moves for summary judgment, arguing that Chavous has failed to establish the essential elements of his claims and cannot rebut the City's neutral reason for his termination. The Court agrees. The City is thus entitled to summary judgment.

## I.    BACKGROUND[1]

The City of Saint Petersburg hired Manuel Chavous as an equipment operator in the Parks and Recreation Department on April 17, 2017. (Doc. 20 at 1.) The City

---

[1] The Court recounts the undisputed facts as contained in the record. To the extent facts are disputed or capable of multiple inferences, the Court construes the record in favor of the non-movant, Chavous. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192–93 (11th Cir. 2004).

informed Chavous of the collective bargaining agreement and the rules and regulations for City employees. (Doc. 17-4 at 1–2, 157.) The agreement requires an employee seeking medical leave to "notify his immediate supervisor . . . before the scheduled reporting time." (Doc. 17-3 at 55.) Unless the Parks Department waives the requirement, the employee is required to call in "for each day the employee is unable to work." (*Id.* at 56.) The same procedure applies to requests for annual leave. (*Id.* at 54 ("Requests for annual leave shall be made in advance of use.").) The City's rules and regulations contain these same requirements. (Doc. 17-4 at 80, 82.) The City's rules also explain that "[f]ailure to make a proper leave request or call-off or failure to properly report a late arrival" is attendance-related misconduct. (*Id.* at 133.)

On November 9, 2017, Chavous injured his hand while unloading grass from a trailer. (Doc. 20 at 1; Doc. 1 ¶ 6.) On May 9, 2018, Chavous was injured on the job again, this time in a car accident. (Doc. 20 at 1; Doc. 1 ¶ 13.) Chavous received workers' compensation benefits for both injuries under the Florida Workers' Compensation Act (FWCA). (Doc. 20 at 1–2.) He is still receiving treatment. (*Id.*)

Following the first injury, Chavous requested leave paperwork under the Family Medical Leave Act (FMLA). (Doc. 20 at 1–2; Doc. 17 at 5.) He received the notice of eligibility forms on April 2, 2018. (Doc. 17 at 6; Doc. 17-6 at 8.) The City's rules require employees to submit completed requests for FMLA leave within 15 days of receiving the

notice of eligibility. (Doc. 17-4 at 89.) As permitted under the FMLA, *see* 29 U.S.C. § 2613, the City requires the employee to include a certification from a doctor establishing that the employee had a qualifying medical condition as part of the FMLA leave request paperwork. Chavous provided the City an incomplete leave request on July 12, 2018. He dropped those papers off at his doctor's office that same day. (Doc. 20 at 5; Doc. 19 at 5.) His doctor, Dr. Wojnowich, lost the forms and returned the completed certification to the City on July 27, 2018. (Doc. 19 at 5; Doc. 20 at 7.)

The City placed Chavous on light duty following his first injury. (Doc. 20 at 2.) While on light duty, Chavous reported to work at 7:00 a.m. (Doc. 17-3 at 122.) On May 3, 2018, the City released Chavous from light duty and directed him to report to work at 6:00 a.m. the following day. (Doc. 17-2 at 2.) Chavous did not arrive until 6:56 a.m. (*Id.*) The City's collecting bargaining agreement explains that a tardy employee may be deemed absent for the entire day if the employee does not provide notice of tardiness before the shift begins. (Doc. 17-3 at 110.)

On June 11, 2018, the City issued Chavous an Employee Notice for failing to arrive on time and suspended him for two days. (Doc. 20 at 2–3.) Chavous filed a grievance, alleging that he received conflicting instructions from supervisors on when he was to report. (*Id.* at 4.) After review and a hearing, the City denied the grievance because it determined

3

that Chavous had received ample instructions on his return to full duty. (*Id.* at 3–4.) Chavous appealed the decision, but the City dismissed his appeal as untimely. (*Id.* at 4.)

On June 27, 2018, Chavous did not report for work and did not report his absence in advance, as the City's rules require. (Doc. 17-2 at 2; Doc. 20 at 4; Doc. 23-1 at 15–16.) The City issued Chavous a second Employee Notice on July 12, 2018, this time suspending him for five days. (Doc. 20 at 4–5.) The Notice explained that this failure was Chavous's second serious violation within an 18-month period and that any additional violations could result in termination. (Doc. 17-2 at 19.) That same day, Chavous gave the City paperwork requesting FMLA leave, but without the required doctor's certification. (Doc. 20 at 5.) On July 23, 2018, Chavous filed an employee grievance, alleging that he should have been excused for his June 27, 2018 absence because his doctor told him that he should not work until July 2, 2018. (*Id.* at 4–5.) Chavous filed a second grievance on July 23, 2018. (*Id.* at 5.)

While those grievances were pending, Chavous failed to report to work on June 29, July 6, and July 13, 2018. (Doc. 17-2 at 3.) After failing to appear or report his absence on these three consecutive Fridays, the City issued Chavous a third Employee Notice that terminated his employment. (*Id.* at 3, 22.) The Notice described Chavous's absences as "egregious" violations of the City's rules and regulations and that they "demonstrated a clear pattern of abuse of leave privileges, especially around weekends." (*Id.* at 21.)

4

On July 27, 2018, the day after Chavous's termination, Dr. Wojnowich—Chavous's doctor—faxed completed paperwork to the City requesting FMLA leave. (Doc. 17-5 at 2.) Dr. Wojnowich estimated that Chavous's condition could last from one-to-four weeks from July 12, 2018, but he clarified that the estimated days of incapacity were July 12 through July 26, 2018. (*Id.* at 6–7.)

The City held a grievance hearing on August 7, 2018, to address the second and third Employee Notices. (Doc. 20 at 6.) Although the FMLA paperwork was filed late, the City retroactively approved Chavous's request for FMLA leave for July 12 through July 26, 2018. (Doc. 17-5 at 4.) The City also reinstated Chavous, rescinding his termination. (Doc. 17-2 at 3.) Further, relying on the doctor's report that Chavous was incapacitated from July 12 through July 26, the City reduced the prior five-day suspension to two days and granted Chavous backpay. (*Id.* at 3; Doc. 20 at 6.) The City reasoned a two-day suspension was still warranted because the City did not receive the FMLA paperwork until after Chavous took his leave and because Chavous did not follow City procedure for requesting and taking leave. (Doc. 20 at 6–7.) Chavous admits that the paperwork was submitted late, but claims the delay is solely attributable to his doctor. (*Id.* at 7.)

The City decided that Chavous should return to work on August 8, 2018, at 7:00 a.m., the day following the hearing. (Doc. 20 at 7; Doc. 17-3 at 128.) But Chavous did not return on August 8. Nor did he return the next day. (Doc. 17-2 at 23.) By August 24,

Chavous still had not returned to work or explained his absence, (Doc. 23-1 at 15–17), so the City sent Chavous a letter explaining that it would hold a disciplinary hearing on August 27, 2018. (*Id.*; Doc. 20 at 7–9.) Chavous did not attend the hearing, and the City terminated him. (Doc. 20 at 9.) In addition to the previous instances, the City asserted that Chavous had demonstrated a pattern of taking "unscheduled leave," claiming Chavous did not come to work on January 5 or 8, March 15 or 16, the entire week of March 19, and the entire week of April 2. (Doc. 17-2 at 21.)

Chavous admits that the City in fact rescinded his termination, but he denies receiving notice of that decision. (Doc. 20 at 7.) According to Chavous, no one told him at the first grievance hearing that he had been reinstated or that he was supposed to report to work the next day. (*Id.*) He further claims that he never received the City's letters that he had been reinstated and was required to return to work. (*Id.*) He claims to have received notice of his reinstatement only "later on," because the City mailed the documents to his grandmother's address, where he does not reside. (Doc. 20 at 7.) That said, Chavous admits that he received a check for backpay, though he did not know why. (*Id.*) He also admits that he received "a whole stack of documents" and that "it's possible that a letter [asking him to attend the termination hearing] is in there." (Doc. 17-1 at 38.)

6

Following his termination, Chavous filed this action, alleging that the City wrongfully terminated him in violation of the FMLA and FWCA. (Doc. 1.) On October 7, 2021, the City moved for summary judgment on all claims. (Doc. 17.)

## II.    LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A moving party is entitled to summary judgment when the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When that burden is met, the burden shifts to the nonmovant to demonstrate that there is a genuine issue of material fact, which precludes summary judgment. *Id.* The nonmoving party must "go beyond the pleadings and her own affidavits" and point to evidence in the record that demonstrates the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 324. The Court reviews all the record evidence and draws all legitimate

inferences in the nonmoving party's favor. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192–93 (11th Cir. 2004).

## III.   ANALYSIS

Chavous alleges that the City's decisions to discipline and terminate him constituted interference with his rights under the FMLA (Count I), retaliation for exercising his FMLA rights (Count II), and retaliation under the FWCA (Count III). (Doc. 1.) The City moves for summary judgment on all Counts, asserting that there is no dispute of material fact and that it is entitled to judgment as a matter of law. (Doc. 17.) Chavous disagrees, pointing to areas of dispute that he claims preclude summary judgment. (Doc. 19.) Following the City's reply, (Doc. 21), this motion is ripe for decision.

### A. FMLA Interference

In Count I, Chavous alleges that the City interfered with his substantive rights under the FMLA. Specifically, the Complaint explains that the City interfered or denied Chavous's FMLA rights by terminating him and not restoring him to his position following his FMLA leave. In his response to the motion for summary judgment, Chavous also asserts interference claims based on the City's alleged failure to grant him leave and to adequately provide notice of his rights under the FMLA. The City argues that it is entitled to summary judgment on all grounds. The City is correct.

### i. Chavous Has Not Established a Prima Facie Claim of FMLA Interference

An employee establishes an FMLA interference claim when the employee "demonstrate[s] by a preponderance of the evidence that she was entitled to an FMLA benefit that was denied." *Batson v. Salvation Army*, 897 F.3d 1320, 1331 (11th Cir. 2018). The primary FMLA benefit is an entitlement to 12 weeks of leave for "a serious health condition that makes the employee unable to perform the functions of the position." 29 U.S.C. § 2612(a)(1)(D). After taking FMLA leave, an employee is also entitled to be restored to the same or an equivalent position. *See id.* § 2614(a)(1). An employer's motives for denying an FMLA benefit to which the employee is entitled are usually irrelevant. *See Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001). However, an employer is not liable "if [it] can show that it [acted] for a reason wholly unrelated to the FMLA leave." *Id.* If a plaintiff establishes a prima facie case, the question at summary judgment becomes "whether the evidence, viewed in the light most favorable to the non-moving party, establishes as a matter of law that the employer would have terminated the employee regardless of her request for or use of FMLA leave." *Batson*, 897 F.3d at 1331–32.

### 1.    Interference from City's Failure to Reinstate

The prima facie case for FMLA interference requires a plaintiff to establish that he was entitled to an FMLA benefit that the employer denied. *Id.* at 1331. The Complaint

alleges that the City interfered with Chavous's FMLA rights by its "failure to restore" Chavous to his previous position after his request for FMLA leave. (Doc. 1 ¶¶ 29–30.) Of course, the FMLA provides that an "eligible employee who takes leave" under the FMLA is "entitled, on return from such leave" to resume the same or an equivalent position as before the leave. 29 U.S.C. § 2614(a)(1). But the City argues that it is entitled to summary judgment on this claim because it restored Chavous to his position following his FMLA leave. Thus, the City argues, Chavous has not shown that he was denied an FMLA benefit to which he was entitled.

The City fired Chavous on July 26, 2018, for not attending work or properly calling off on at least 17 days. (Doc. 17-2 at 3, 21.) The next day, the City received FMLA paperwork requesting leave for some of those days. (*Id.* at 3.) After review of these documents, the City decided to reinstate Chavous to his prior position. (*Id.*) Chavous admits that he was in fact restored to his position. (Doc. 20 at 7.) Accordingly, Chavous received the benefit that his Complaint alleges he was entitled to under the FMLA. Thus, Chavous has not established that, with respect to his first termination, "his employer denied or otherwise interfered with his substantive rights under the Act." *Strickland*, 239 F.3d at 1206.

As to his second termination, Chavous also has not established a prima facie case of interference. Again, Chavous must "demonstrate by a preponderance of the evidence that

[he] was entitled to an FMLA benefit that was denied." *Batson*, 897 F.3d at 1331. The Complaint alleges that the City denied Chavous the FMLA benefit of being returned to his previous position after taking FMLA leave. (Doc. 1 ¶¶ 29–30.) As Chavous admits, he requested FMLA only once, (Doc. 17-1 at 29), through the paperwork submitted on July 27, 2018, (Doc. 17-5 at 2). In those documents, Chavous's doctor reported that Chavous would be incapacitated from July 12 through July 26, and thus eligible for FMLA leave under 29 U.S.C. § 2612(a)(1). (*Id.* at 6–7.)

Accordingly, on August 7, the City retroactively granted Chavous's FMLA leave for July 12 through July 26, 2018. That same day, the City reduced his suspension, restored Chavous to his prior position, and "directed [him] to report for duty at 7:00 a.m. on August 8, 2018." (Doc. 17-2 at 23.) The second and final termination came on August 27, 2018, after Chavous did not return to work.

Chavous's second termination thus arose when he was not on FMLA leave.[2] Section 2614(a) requires an employer restore an employee to a prior position only "on return from

---

[2] Chavous "note[s] that the doctor advised that Plaintiff's recovery could take up to four weeks." (Doc. 19 at 5.) Although true based on the certification, those four weeks referenced by his doctor were in July, not August, before his reinstatement. It is thus irrelevant to a prima facie showing based on this second termination.

First, the doctor's report clarifies that Chavous would be incapacitated from July 12 to July 26. (Doc. 17-5 at 6–7); *see* 29 U.S.C. § 2612(a)(1)(D) (requiring leave for "a serious health condition that makes the employee unable to perform the [job]"). The City's grant of FMLA leave included only July 12 to July 26. (Doc. 17-5 at 4.). If Chavous needed additional leave, City procedures directed him on how to do it. (Doc. 17-6 at 13 ("The FMLA requires that you notify us as soon as practicable if dates of scheduled leave change . . . .").)

such leave," meaning FMLA leave under § 2612. Consequently, Chavous was not entitled to be restored to his prior position under the FMLA. *See Jones v. Gulf Coast Health Care of Del., Inc.*, 854 F.3d 1261, 1268 (11th Cir. 2017) (acknowledging that an employee on non-FMLA medical leave is not protected from termination by the FMLA). If Chavous was not entitled to be restored to his position following his second termination, then the City's failure to do so cannot be a denial of an FMLA benefit. *See* § 2614(a)(3) (noting that "[n]othing in this section shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment . . . to which the employee would [not] have been entitled had the employee not taken the leave"). And Chavous supplies no argument to the contrary. Chavous asserts in his response that, "by terminating his employment, [the City] has indisputably interfered with Plaintiff's rights under the FMLA." (Doc. 19 at 5.) But that is an unsubstantiated conclusion that does not identify the benefit denied or establish that Chavous was entitled to it under the FMLA. The plaintiff bears the burden to establish a prima facie case of interference. Chavous has not done that.

---

Second, even accepting Chavous's argument that he was on FMLA leave through the end of the four-week period, that only gets him to August 9. He did not request additional FMLA leave. And Chavous did not return to work before his termination on August 27. Thus, he was not on FMLA leave on August 27 when he was terminated and was not entitled to be restored to any position at that time. *Cf. Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1283–84 (11th Cir. 1999) (explaining that the employer "had ample reason to classify plaintiff's August absences as 'without leave' since" the absences extended beyond the period mentioned in plaintiff's excuse note).

### 2.    Interference from City's Failure to Grant Leave

In response to the City's motion for summary judgment, Chavous argues that the City interfered with his FMLA rights by denying him leave when he was entitled to it. (Doc. 19 at 2.) This interference argument appears nowhere in the Complaint. (Doc. 1 ¶¶ 29–30.) The Complaint alleges interference due to the City's decision to terminate Chavous from his position, (*id.* ¶ 29), and its "failure to restore" Chavous "to his previous position or an equivalent position," (*id.* ¶ 30). But there is nothing within this Count that would put the City on notice that Chavous was improperly denied FMLA leave. *See Simmons v. Indian Rivers Mental Health Ctr.*, 652 F. App'x 809, 819–20 (11th Cir. 2016) (affirming district court decision to "limit[] the scope of [plaintiff's] FMLA interference claim to the factual averments of the Complaint").

Even if it was proper to consider such an argument here, Chavous has not properly made it. *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) ("A party who aspires to oppose a summary judgment motion must spell out his arguments squarely and distinctly, or else forever hold his peace."). For example, Chavous's response says that it "should also be noted that the doctor advised that Plaintiff's recovery could take up to four weeks." (Doc. 19 at 5.) Perhaps Chavous means to suggest that the City improperly denied him the full FMLA leave he requested. But Chavous does not say so. This oblique reference does not suffice to establish a prima facie claim of interference.

*Higgins*, 194 F.3d at 260 ("The district court is free to disregard arguments that are not adequately developed . . . ."). At summary judgment, "the onus is upon the parties to formulate arguments." *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

### 3.    Interference from City's Failure to Provide Notice

Chavous makes one final attempt to state an interference claim. Chavous's response argues that the City denied him an FMLA benefit because it did not make him aware of his FMLA rights once it was on notice that he might be eligible. (Doc. 19 at 4–5.) According to Chavous, Department of Labor regulations required the City to inform him of his FMLA rights as soon as it learned of his injury. *See* 29 C.F.R. § 825.300(b)(1).

This argument fails because Chavous did not mention it until his response to the motion for summary judgment. Even under the "liberal pleading standard for civil complaints," plaintiffs may not "raise new claims at the summary judgment stage." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (per curiam). Nowhere in the Complaint does Chavous allege that the City provided him with inadequate notice of his eligibility for FMLA leave. *See White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1199–1200 (11th Cir. 2015) (affirming district court's refusal to consider employer-notice claim when not presented in a complaint alleging FMLA interference). Nor does the Complaint mention 29 C.F.R. § 825.300(b)(1) or allege that the City violated it.

Whatever the merits of that contention, a plaintiff may not assert new legal theories in a response to forestall summary judgment. *See Simmons*, 652 F. App'x at 820 ("An FMLA plaintiff cannot raise a new claim at trial [that was not in the complaint.]"); *Dowler v. GEICO Gen. Ins. Co.*, ___ F. Supp. 3d ___, 2021 WL 3563018, at *6 (M.D. Fla. Aug. 12, 2021) (Covington, J.) (disregarding FMLA interference theories that were absent from the complaint and advanced in response to summary judgment).

In his response to the City's motion, Chavous asserts a new legal theory based on a regulation he had not previously raised and then observes that the City "has failed to provide any evidence" on the claim it did not know about. (Doc. 19 at 5.) Such a tactic is procedurally improper and substantively unfair because there was no "basis for [the City] to have understood from the complaint that [Chavous] was alleging an employer-notice cause of action—i.e., that it failed to give notice to its employees." *White*, 789 F.3d at 1200. If Chavous wished to present this claim, he should have moved to amend the Complaint under Rule 15; he cannot "amend [his] complaint through argument in a brief opposing summary judgment." *Gilmour*, 382 F.3d at 1315.

Furthermore, even if Chavous's argument was properly presented and argued, it still falls flat. To prevail, Chavous "must show harm from the alleged interference with [his] rights." *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1274–75 (11th Cir. 2020) (citation

omitted). He must also show the employer's acts amounted to more than "technical infractions." *Id.* (quotation omitted). Chavous has not done that and cannot on this record.

First, it is undisputed that Chavous reviewed the City's rules and regulations for employees as part of his orientation. (Doc. 17-4 at 2.) An entire section of these rules is dedicated to explaining an employee's FMLA rights and the procedures for invoking them. (*Id.* at 11, 86–92.) Second, Chavous requested FMLA leave paperwork and received a notice of his eligibility for FMLA leave on April 2, 2018. (Doc. 17-6 at 8.) Accordingly, even "if the [City] committed certain technical infractions" under the regulation, *Munoz*, 981 F.3d at 1275 (quotation omitted), Chavous knew of his FMLA rights before his first and second termination, before the bulk of his unscheduled absences, and even before the second injury on May 9, 2018, (Doc. 1 ¶ 13).

In addition, Chavous ultimately requested FMLA leave and the City approved it. Given his prior knowledge of his FMLA rights and successful invocation of them, Chavous fails to show that he was damaged by the City's alleged violation of the regulation. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1284 (11th Cir. 1999) (per curiam) (denying FMLA claim because the employee received all the leave she requested and thus has "not demonstrated that she suffered any damages as a result of [her employer's] action"). Stated otherwise, "[Chavous] has not shown [he] was harmed by [the City's] failure to notify [him] of [his] right to FMLA leave." *Munoz*, 981 F.3d at 1275.

16

Accordingly, even if properly presented, Chavous fails to establish a prima facie case of interference due to the City's supposed failure to provide him notice.

### 4. Conclusion

All told, Chavous has not established a prima facie case of FMLA interference. His newly advanced claims for denial of leave and lack of notice are foreclosed because they were not advanced in the Complaint. The core claim for failure to reinstate following FMLA leave fails because Chavous was restored following his first termination and he has not established that he was entitled to reinstatement at the time of his second termination. Accordingly, Chavous has not established that the City denied him an FMLA benefit to which he was entitled. *See Celotext Corp.*, 477 U.S. at 323 (reasoning that, when the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case," the moving party is entitled to summary judgment). The City is entitled to summary judgment on Count I.

### ii. The City Terminated Chavous for a Reason Wholly Unrelated to His Request for FMLA Leave

Alternatively, even if Chavous had established a prima facie case of FMLA interference, the City is entitled to summary judgment if it acted for a reason "wholly unrelated" to his request for FMLA leave. *Strickland*, 239 F.3d at 1208. Unlike retaliation claims, there is no burden shifting or formal pretext analysis. *See Herren v. La Petite Acad., Inc.*, 820 F. App'x 900, 906 (11th Cir. 2020) (per curiam) (distinguishing between FMLA

retaliation and interference claims). Instead, the City bears the burden of establishing a lack of causal connection. *Id.* Accordingly, the question is "whether the evidence, viewed in the light most favorable to the non-moving party, establishes as a matter of law that the employer would have terminated the employee regardless of her request for or use of FMLA leave." *Batson*, 897 F.3d at 1331–32.

The City argues that it disciplined and fired Chavous for a reason wholly unrelated to his request for FMLA leave or his decision to take FMLA leave. (Doc. 17 at 3–5.) Specifically, the City claims it fired Chavous for his repeated disregard for the City's "proper policies in calling off from work." (Doc. 21 at 3.) The Court agrees.

Concerning the first, second, and third Employee Notices, the evidence shows that the City had ample reason to fire Chavous that was not related to his requests for FMLA leave. Chavous did not arrive for work on January 5 and 8, March 15 and 16, the week of March 19, the week of April 2, May 4, June 27, June 29, July 6, or July 13. (Doc. 17-2 at 21.) The City provides evidence that Chavous did not follow the proper procedures for reporting his absences in advance. (Doc. 23-1 at 13, 15–16, 40.) And Chavous identifies no evidence to the contrary. *See, e.g., Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (noting that the non-movant cannot rest on "mere allegations" of disputes, "but must 'set forth' by affidavit or other evidence 'specific facts'" showing there is a dispute for trial (internal citation and quotation omitted)); *Leige v. Capitol Chevrolet, Inc.*, 895 F. Supp.

289, 291 (M.D. Ala. 1995) (explaining that the non-movant bears a "burden" of "set[ting] forth specific facts showing that there is a genuine issue for trial").

Chavous's behavior broke the City's rules on absences and on reporting absences in advance, both of which Chavous knew about when accepting employment with the City. (Doc. 17-4 at 1–2.) As part of his new employee orientation materials, Chavous acknowledged that "[i]t is the employee's responsibility to communicate absences, late arrivals, or schedule changes in a timely manner," and that he should "report absences or tardiness prior to [his] scheduled shift." (Doc. 17-2 at 12.) As Chavous was also aware, a "[f]ailure to make a proper leave request or call-off" is itself attendance-related misconduct. (Doc. 17-4 at 133.) So, even if Chavous had a valid excuse for missing work, such as a doctor's appointment, the City was still entitled to discipline Chavous for not properly reporting his absences. *See Montgomery v. Ion Media Mgmt. Co.*, No. 8:10-cv-429, 2011 WL 1791294, at *9 (M.D. Fla. May 10, 2011) (Covington, J.) (concluding that the employer was entitled to summary judgment because the employee was terminated for her absenteeism, not her requests for FMLA leave).

Under the City's progressive discipline program, Chavous's repeated rule infractions led to increased discipline. (Doc. 20 at 3.) The City first suspended Chavous for two days. (*Id.* at 2–3.) When Chavous again missed work on June 27 without prior explanation, the City suspended him for five days. (Doc. 20 at 5.) Chavous then did not arrive for work or

19

call in his absence on June 29, July 6, or July 13. (Doc. 17-2 at 3.) Construing Chavous's absences as a "clear pattern of abuse of leave privileges," the City fired him. (*Id.* at 21.) Firing an employee because—despite multiple notices—he fails to comply with the procedures for notifying superiors of his absences is a reason wholly apart from requests for FMLA leave.

Moreover, the City did not know that Chavous intended to seek FMLA leave until the day *after* the first termination. (Doc. 17-2 at 3; Doc. 17-5 at 2.) True, Chavous requested FMLA paperwork and received it on April 2, 2018. (Doc. 17 at 5–6.) But the City required employees to submit completed FMLA leave requests within 15 days of receiving the notice of eligibility. (Doc. 17-4 at 89.) The paperwork Chavous received on April 2 explained that Chavous needed to return the completed form by April 16, 2018. (Doc. 17-6 at 9.) Chavous did not do that. As the FMLA allows, the City required employees requesting leave to support their request with "a certification issued by [a doctor]." 29 U.S.C. § 2613(a); (Doc. 17-4 at 89). In turn, the employee is required by statute to provide the completed certification to the employer "in a timely manner." § 2613(a). Chavous submitted FMLA documents on July 12, but he did not include the essential doctor's certification. (Doc. 20 at 5, 6–7.)

Accordingly, when the City terminated Chavous on July 26, it did not know that he intended to seek FMLA leave for an injury that occurred on May 9, 2018. And, since

the FMLA ordinarily requires employees give an employer "not less than 30 days' notice" before commencing FMLA leave, 29 U.S.C. § 2612(e)(1), the City could not have guessed that Chavous would request leave for days he had already missed. *Cf. Pereda v. Brookdale Senior Living Communities*, 666 F.3d 1269, 1274 (11th Cir. 2012) (observing that "the FMLA requires notice in advance of future leave" to protect employers and "provide them with sufficient notice of extended absences"). Considering this timeline, the City was not aware that Chavous would request FMLA leave and, thus, must have fired Chavous for another reason. *See Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010) (reasoning that "the unrebutted evidence that the decision maker was not aware, at the time of the decision to terminate [the employee] of her request to commence FMLA leave establishes as a matter of law that [the employee's] termination was for reasons other than her requested leave").

That other reason is evident from the record. Chavous repeatedly disregarded the City's requirement that he provide advance notice of his absences. As Chavous's foreman Alfreddie Jones explained, Chavous was "not responding to the phone calls, not reporting like he's supposed to report." (Doc. 23-1 at 15.) Although Chavous "knew the rules and regulations of the city" and knew Jones's phone number, Jones testified that Chavous did not call him to report his absences. (*Id.* at 16.) Chavous's repeated unexplained absences gave the City ample reason to suspend and terminate him.

21

So too, the final termination was for a reason wholly separate from Chavous's request for FMLA leave. At or following the first hearing, the City granted Chavous FMLA leave for July 12 through July 26. (Doc. 17-6 at 47.) The City determined that Chavous should return to work the next day, August 8, 2018. Chavous did not return to work for the next 21 days. (Doc. 17-2 at 3–4.) Chavous did not contact the City to provide an explanation. (Doc. 23-1 at 13.) So, the City sent a notice of a disciplinary hearing via certified mail. (Doc. 17-3 at 129–130; Doc. 17-6 at 55–57.) After Chavous did not appear or explain his absence at the hearing on August 27, 2018, the City fired him again. As with the first, second, and third Employee Notices, the reason evident from the record is that the City fired Chavous for failing to arrive for work and failing to follow City procedures for reporting absences. As Chavous's foreman explained, "[Chavous] was terminated for not following the city rules and regulations." (Doc. 23-1 at 13.) This reason is wholly unrelated to Chavous's request for FMLA leave, entitling the City to summary judgment. *See Krutzig*, 602 F.3d at 1236 (reasoning that an "employer is not liable for failing to reinstate the employee after [he] has taken FMLA leave" if the "employer can show that it refused to reinstate an employee for a reason unrelated to FMLA leave").

Chavous disagrees. He begins by arguing that the City's decision to discipline and fire him was "ultimately related to [Chavous] missing work." (Doc. 19 at 1.) If he missed work for medical reasons related to his work injuries, Chavous reasons, then he was entitled

22

to FMLA leave for those absences. And, Chavous concludes, if the City fired him for absences when he *could have* requested FMLA leave, then the City discharged him for a reason that is related to FMLA leave. Not so.

An employer does not violate the FMLA by firing an employee who is eligible for FMLA leave. After all, "the right to commence FMLA leave is not absolute." *Krutzig*, 602 F.3d at 1236. Instead, "if a dismissal would have occurred regardless of the request for FMLA leave, an employee may be dismissed," even if it "prevent[s him] from exercising [his] right to leave or reinstatement." *Id.* Accordingly, the mere fact that Chavous was eligible for FMLA leave is not determinative. *See Montgomery*, 2011 WL 1791294, at *11 (explaining that an employee is not "insulated from termination" just become he has raised "the possibility of [his] need for FMLA leave" or even by "formally request[ing] such leave"); *accord Gamba v. City of Sunrise*, 157 F. App'x 112, 113 (11th Cir. 2005).

So too, Chavous's chain of inferences does not render the City's reason for terminating him related to the FMLA leave request. The City asserts and provides evidence that it fired Chavous for his failure to report to work *and* his failure to follow the City's procedures that required him to report his absences in advance. (Doc. 23-1 at 13, 15–16.) Chavous's repeated rule infractions provide a reason for termination that is distinct from his request for FMLA leave.

### iii.   Chavous Has Not Established Causation or Pretext

Chavous attempts to avoid this result by arguing that the City's stated reason for his termination was pretextual. (Doc. 19 at 10.) Unlike retaliation claims, there is no pretext analysis for interference claims. *See Martin v. Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1267–68 (11th Cir. 2008) (distinguishing FMLA interference and retaliation claims). So, the Court construes Chavous's arguments as attempts to advance evidence of causation to rebut the City's affirmative defense that its reason for terminating Chavous was wholly unrelated to FMLA leave requests. *See Batson*, 897 F.3d at 1331–32 (treating evidence of pretext as support for causation). Chavous makes three arguments. Not one provides evidence from which a reasonable jury could infer that the City's reason for the final termination was related to Chavous's request for FMLA leave.

First, Chavous asserts that the close temporal proximity between his request for FMLA leave and his termination is sufficient evidence of pretext (or causation) to prevent summary judgment. He is wrong. As recounted above, the City has provided "numerous documented instances" showing that Chavous did not comply with the City's policies for requesting and taking leave. *Gamba*, 157 F. App'x at 113. "Where the employer produces significant evidence of an employee's poor performance"—as the City has here—"it is not enough that the request for leave and the termination are closely related in time." *Id.* (affirming summary judgment for the employer because the employee "produced virtually

24

no evidence" except the temporal relationship between the leave request and termination). "In light of the ample legitimate reasons for the termination decision proffered by the City, the truth of which was never effectively challenged," temporal proximity is not sufficient "evidence from which a reasonable jury could find any causal connection." *Wascura v. City of S. Miami*, 257 F.3d 1238, 1247 (11th Cir. 2001).

Second, Chavous asserts that the City has "failed to provide record evidence that it ever actually made [Chavous] aware of his reinstatement" and that failure supports a finding of pretext. (Doc. 19 at 11.) Of course, the correct inquiry is whether it suggests causation such as to negate the City's assertion that its reason for firing Chavous was wholly unrelated to his requests for FMLA leave. It does not.

Even if the City did not tell Chavous of his reinstatement at the hearing, undisputed evidence shows that the City made the decision to reinstate him on August 7, the day of the hearing. (Doc. 20 at 6–7; Doc. 17-2 at 3; Doc. 17-3 at 128–129.) The evidence also shows that City officials believed Chavous had been reinstated on August 7 and expected his return to work on August 8. (Doc. 17-3 at 128.) So too, evidence shows the City tried to inform Chavous of the reinstatement and the August 27 hearing by sending notices via certified mail. (*Id.* at 129–130; Doc. 17-6 at 55–57.) These envelopes were addressed to "Mr. Manuel D. Chavous." (Doc. 17-6 at 55–77.) In his deposition, Chavous says these

notices were sent to his grandmother's house, where he did not reside.[3] (Doc. 17-1 at 37.) But Chavous admits that he eventually received these notices. (*Id.*) He says that the City "sent a lot of stuff in the mail," and that it is "possible that a letter like that's in there." (*Id.* at 38.)

All told, these disputations on the form and timing of notice do not provide evidence from which a reasonable jury could infer a causal connection between the City's decision to terminate Chavous and his request for FMLA leave. At most, a jury could infer that the City made a mistake, or that it unreasonably expected Chavous to receive mail more quickly than he did. But this Court is not "a super-personnel department that reexamines an entity's business decisions," not even those that are "medieval," "high-handed," or "mistaken." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (quotation omitted). Instead, an "employer may fire an employee for . . . a reason based on erroneous facts, or for no reason at all, so long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns.*, 738 F.2d 1181, 1187 (11th Cir. 1984). That said, there is nothing "medieval" or "high-handed" about terminating an employee

---

[3] Chavous claims that the City mailed the letters and notices to his grandmother's house, where he did not reside. (Doc. 17-1 at 37.) Chavous does not argue that he usually received his mail elsewhere or that the City picked this address at random. The City rules required Chavous to promptly notify the City of any change in address. (Doc. 17-4 at 133.) Of course, it would not be evidence of pretext if Chavous did not check his mail between August 9 and August 27, 2018.

for repeated absences and violations of the City's policy. And even a misguided notion of the efficiency of the mail system by the City hardly constitutes causation here.

Finally, Chavous argues that the City's decision to reduce his suspension and reinstate him following his request for FMLA leave is evidence of pretext. (Doc. 19 at 2.) Whether styled as an argument for pretext or for causation, it is unpersuasive. Chavous does not provide further explanation of how a reasonable jury could infer from the City's decisions to grant Chavous's request for FMLA leave on August 7 that its decision to terminate him on August 27 was related to his request for FMLA leave. This Court "declines to fill in the gaps on [his] behalf." *Moore v. GPS Hosp. Partners IV, LLC*, 383 F. Supp. 3d 1293, 1312 (S.D. Ala. 2019); *see Drago v. Jenne*, 453 F.3d 1301, 1308 n.4 (11th Cir. 2006) (reasoning that "anger" at an employee's decision to commence leave "without telling anyone" in advance did not show a causal connection to a later demotion).

Even if Chavous had stated a prima facie case of interference, the City is entitled to summary judgment because it has provided evidence that it terminated Chavous for a reason wholly unrelated to his request for FMLA leave. And even drawing all reasonable inferences in his favor, Chavous has not put forward any evidence of causation from which a reasonable jury could find the opposite. *Cf. Wascura*, 257 F.3d at 1248 (noting that the plaintiff had "failed to adduce sufficient evidence from which a reasonable jury could find that the reasons proffered by the City for her termination were pretextual"). Instead, "the

evidence shows that [Chavous] was [fired] because of [his tardiness, absences, and failure to request leave]; [he] was not [fired] because (i.e. *for the reason that*) [he] took FMLA leave." *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010). The City is entitled to summary judgment on Count I.

### B. FMLA Retaliation

A claim for FMLA retaliation is evaluated under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff must establish a prima facie case for retaliation. If the plaintiff does so, the burden shifts to the employer to provide a legitimate reason for the termination. If the employer provides such a reason, the burden shifts back to the employee to show that the asserted rationale is pretextual. *See Martin*, 543 F.3d at 1268.

In Count II, Chavous alleges that the City, "shortly after [his] return from his suspension, terminated him from his position in violation for him exercising his rights under the [FMLA]." (Doc. 1 ¶ 33.) Count II further asserts that the termination was "not based on reasonable grounds and was not in good faith." (*Id.* ¶ 34.)

### i. Chavous Has Not Established a Prima Facie Case of FMLA Retaliation

To establish a prima facie case of FMLA retaliation, the employee must show that (1) he engaged in FMLA protected conduct, (2) he suffered an adverse employment action, and (3) there is a causal link between the protected conduct and the adverse employment

action. *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000). Unlike an interference claim, a retaliation claim places an "increased burden" on a plaintiff to show "that his employer's actions 'were motivated by an impermissible retaliatory or discriminatory animus.'" *Strickland*, 239 F.3d at 1207 (quoting *King v. Preferred Tech. Grp.*, 166 F.3d 887, 891 (7th Cir. 1999)). A plaintiff's ultimate burden is to "demonstrate that his employer intentionally discriminated against him." *Id.*

The City does not dispute the first two elements of the prima facie case. Chavous engaged in statutorily protected conduct when he requested FMLA leave and he suffered an adverse employment action when the City terminated him. The dispute is whether Chavous "came forth with sufficient evidence to create a genuine issue of fact that [his] application for FMLA leave caused [his termination]." *Brungart*, 231 F.3d at 798.

To establish causation, "a plaintiff need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (quotation omitted). Usually, "close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact." *Brungart*, 231 F.3d at 799. But "temporal proximity, without more, must be 'very close'" to establish causation. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). For causation purposes, the relevant period is "the last day of an employee's FMLA leave until the adverse

29

employment action at issue occurs." *Jones*, 854 F.3d at 1272. "Temporal proximity alone, however, is not sufficient to establish a causal connection when there is unrebutted evidence that the decision maker was not aware of the protected activity." *Krutzig*, 602 F.3d at 1235.

The City argues that Chavous has failed to present sufficient evidence of causation. The City is correct. As explained above, the City did not know at the time of Chavous's first termination on July 26, 2018, that he would file completed paperwork requesting FMLA leave. The City did not receive the doctor's certification until the following day. Chavous offers no evidence that the City was otherwise aware he would file compliant paperwork. Accordingly, Chavous fails to show causation as to his first termination.

As to the second termination, Chavous presents some evidence of temporal proximity. The City approved Chavous's request for FMLA leave and retroactively granted him leave from July 12 through July 26. The City then fired Chavous about a month later, on August 27, 2018. The Eleventh Circuit has found a period of approximately a month sufficient to suggest causation as part of a prima facie case. *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (explaining a period of one month is not "too protracted" to establish a prima facie case of causation through a temporal proximity for purposes of an ADA retaliation claim).

Even though there is about a month between the end of Chavous's FMLA leave on July 26 and his August 27 termination, that connection is not sufficient evidence of

causation here. *See Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1232 (11th Cir. 2006). Temporal proximity alone is insufficient to show causation when "an employer contemplates a given action" before the exercise of FMLA rights. *Id.* For example, in *Cotton*, the Eleventh Circuit held that a two-month gap between a complaint of sexual harassment and an allegedly retaliatory decrease in hours was insufficient evidence to show causation because the employer had informed her before her complaint that her hours would decrease after Christmas. *Id.* at 1229–30, 1232. Similarly, in *Drago*, the court held that the employee could not establish causation through temporal proximity alone because "the record evidence was overwhelming that [the employer] contemplated demoting" the employee before he engaged in protected activity. *Drago*, 453 F.3d at 1308. Same here.

The undisputed evidence shows that Chavous did not arrive for his scheduled shifts on numerous occasions, beginning in January 2018 long before his FMLA leave and continuing through August 2018 well past it. There is also abundant evidence that Chavous did not follow the City's call-off procedures before he missed work on these days. (Doc. 23-1 at 13, 15–16.) Chavous has not pointed to record evidence to the contrary.

And the City's rationale for disciplining Chavous remained consistent: his refusal to arrive for work when he was scheduled to do so and his failure to follow City procedures to request time off. Chavous's foreman raised this issue in his April 10, 2018 performance

review, noting that Chavous used "more unscheduled leave than [was] acceptable" and that he needed to improve within the next evaluation cycle. (Doc. 23-1 at 40–41.) The City issued Chavous an Employee Notice on May 4, 2018, after he "disregarded his job duties when he failed to follow his supervisor's directive to report to work at 6:00 a.m." (Doc. 17-2 at 17.) The Notice explained that Chavous was "expected to report for duty at his assigned [work times]" and that "any additional violations" would "result in progressive discipline, up to and including termination." (*Id.*) Chavous signed the document, acknowledging his receipt of these expectations. (*Id.* at 18.)

On July 12, 2018, the second Employee Notice again stated this rationale as the basis for Chavous's suspension. The Notice cited Chavous for being "[a]bsent without permission or leave." (*Id.* at 19.) It explained that "Chavous failed to report for his scheduled 7:00 a.m. shift and also failed to report his absence per Department policy." (*Id.*) The City again warned Chavous that "any additional violations" would result in discipline, including termination. (*Id.*) Though signed "under duress," Chavous again acknowledged his receipt of these expectations. (*Id.* at 20.)

On July 13, the City denied Chavous's grievance against the first Employee Notice, explaining that Chavous's "refusal to report as instructed multiple times is clearly 'disregarding job duties'" under the City's rules. (Doc. 17-3 at 123–24.) The City then

repeated the instruction that Chavous was "required to report to work as instructed or follow the department's call-in procedures." (*Id.* at 124.)

The third Employee Notice issued on July 26, 2018, is similar. It cites to numerous instances of "unscheduled leave." (Doc. 17-2 at 21.) The Notice explained that Chavous had continued to take unscheduled leave "[d]espite numerous counseling sessions and the receipt of [two Employee Notices]." (*Id.* at 22.)

On August 27, 2018, the fourth Employee Notice—and the second termination—repeats the same theme. It cites Chavous for being "absent from duty . . . without proper authorization." (Doc. 17-2 at 23.) On that same day, the City mailed Chavous a letter saying that "[a]s he did not call-in, nor attend [the second hearing,]" he was terminated. (Doc. 17-3 at 130.)

All told, the evidence demonstrates that the City considered disciplining and actually disciplined Chavous for his failure to report to work and report his absences long before the City received his completed FMLA paperwork on July 27, and even before Chavous's incomplete FMLA documents were filed on July 12. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 269, 272 (2001) (per curiam) (holding that an employer's decision to "proceed[] along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality"). The final termination on August 27 was simply a culmination of the reason articulated for Chavous's discipline from the start. Accordingly,

Chavous's evidence of temporal proximity "does not suffice to show causation." *Drago*, 453 F.3d at 1308 (holding temporal proximity was insufficient when employer had considered demoting the employee for performance-related reasons at least five months before his FMLA leave); *accord Aponte v. Brown & Brown of Fla., Inc.*, 806 F. App'x 824, 832 (11th Cir. 2020) (same); *see also Breeden*, 532 U.S. at 272 (reasoning that a one-month gap was "immaterial" because the employer was contemplating the transfer before it learned of the protected activity). Thus, Chavous has not established a prima facie case of FMLA retaliation. The City is entitled to summary judgment on Count II.

### ii.  The City Asserts a Legitimate Reason for Termination

Even if Chavous had established a prima facie case, the City would have the opportunity to provide a legitimate, non-discriminatory reason for its actions. *See Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1335 (11th Cir. 2000). The City has such a reason ready in hand. As explained at length above, the City asserts that it terminated Chavous for his failure to follow the City's protocols for notifying his superiors in advance that he would not be at work for his scheduled shifts. (Doc. 21 at 3.) On its face, this is not a reason that "intentionally discriminated against [Chavous] for exercising an FMLA right." *Martin*, 543 F.3d at 1267.

### iii.   Chavous Has Not Demonstrated Pretext

Since the City has supplied a neutral reason for the termination, the burden shifts back to Chavous to "show that the employer's proffered reason was pretextual." *Id.* at 1268. To do so, Chavous must present evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006). This evidence should demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered reasons "that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997). Ultimately, to "avoid summary judgment," a plaintiff "must introduce significantly probative evidence" of pretext. *Clark*, 990 F.2d at 1228 (citation omitted).

The City asserted that it fired Chavous for not "follow[ing] the City's proper policies in calling off from work." (Doc. 21 at 3.) To show that a reason is pretextual, Chavous "must meet that reason head on and rebut it." *Chapman*, 229 F.3d at 1030 (reasoning that an employee cannot "succeed by simply quarreling with the wisdom of that reason"). Though Chavous asserts four theories or signs of pretext, not one is sufficient for a reasonable factfinder to find that the City's proffered reason was a mere mask for intentional retaliation for an exercise of Chavous's FMLA rights.

First, Chavous asserts that the City's decision to reduce his suspension from five days to two days, as well as to rescind the initial termination, "would allow a reasonable jury to infer that the reasons for the discipline were mere pretext for unlawful retaliation." (Doc. 19 at 2.) The City counters that it "reduced the suspension, reinstated employment, and offered backpay because [Chavous] finally offered a reason to the City for his absences." (Doc. 21 at 3.) As the City explained at the time, it kept two days of suspension because Chavous requested leave only after he took it. (Doc. 20 at 6–7.) Thus, the City advances that its behavior confirms it asserted rationale, rather than rebutting it. (Doc. 21 at 3); *see Kirkland v. City of Tallahassee*, 856 F. App'x 219, 224 (11th Cir. 2021) (dismissing plaintiff's suggestion of pretext when "he failed to introduce any evidence that was inconsistent" with the employer's asserted reason, and instead tended to support it). The Court agrees with the City. *See Schaaf*, 602 F.3d at 1244 (reasoning that employer's decision to fire plaintiff after first proposing reinstatement was not a sign of pretext because plaintiff's poor performance motivated both decisions).

Second, Chavous points to the discipline itself as evidence of pretext. Chavous argues that the City's decision to discipline him for days when he did not report to work was "tantamount" to the City doubting that Chavous was "taking leave for medical reasons." (Doc. 19 at 10–11.) But Chavous points to no evidence to support this argument for pretext. It cannot be that the City's decision to discipline Chavous is probative evidence

36

that its asserted reason for disciplining him was pretextual. Instead, the City's discipline tends to support its legitimate "frustration that [Chavous] failed to communicate [his upcoming absences]." *Drago*, 453 F.3d at 1308 n.4. (finding an employer's anger over the employee's unscheduled leave "not relevant" evidence for connecting the employee's protected activity and his demotion). This is a legitimate reason that this allegation of pretext does not address or rebut. *See Chapman*, 229 F.3d at 1030 (requiring that the employee meet the employer's reasons "head on" and "rebut" them).

Chavous attempts to liken his allegation of pretext to that in *Jones*. *See Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261 (11th Cir. 2017). The citation is inapposite. In *Jones*, the plaintiff identified evidence that the employer's reasons for his termination were "inconsistent, contradictory, and implausible." *Id.* at 1275. Specifically, the plaintiff showed that the employer's asserted reasons changed after the termination; the employer's description of his behavior contradicted its asserted reasons; and the employer did not have a written rule embodying the policy he supposedly violated. *Id.* The record here is precisely the opposite. The City's description of Chavous's conduct and its asserted rationale has remained *consistent* since the very first Employee Notice: Chavous violated the City's *written* policy[4] on attendance and reporting absences in advance.

---

[4] For example, the City's collective bargaining agreement explains that an employee is "AWOL" "whenever an employee fails to call his Department" and "fails to report for work" within four hours of the start of his scheduled shift. (Doc. 17-3 at 94.)

Third, Chavous argues "there is reason to doubt [the City's] ultimate reason" for the termination because the City "has failed to provide evidence that it ever actually made [Chavous] aware of his reinstatement." (Doc. 19 at 11.) The Court addressed this argument above and found it unconvincing. The Court will not repeat the full discussion here. It suffices to say that, even if the City did not tell him of his reinstatement at the hearing, evidence shows that City officials believed Chavous had been reinstated on August 7 and expected his return to work on August 8. (Doc. 17-3 at 128.) So too, evidence shows the City tried to inform Chavous of the reinstatement and the August 27 hearing. (*Id.* at 129–130; Doc. 17-6 at 55–77.) And Chavous admits that he eventually received these notices. (Doc. 17-1 at 37.) In the light of the City's belief that it had informed Chavous at the August 7 hearing and its repeated attempts to contact Chavous by mail, Chavous, at most, raises an inference that the City made a mistake about what Chavous knew. An "employer may fire an employee for . . . a reason based on erroneous facts, or for no reason at all, so long as its action is not for a discriminatory reason." *Nix*, 738 F.2d at 1187 (citation omitted); *see also Chapman*, 229 F.3d at 1030 (a federal court is not "a super-personnel department that reexamines an entity's business decisions" (quotation omitted)). Instead, the "inquiry is limited to whether the employer gave an honest explanation of its behavior." *Chapman*, 229 F.3d at 1030 (quotation omitted).

38

Finally, Chavous points to the temporal proximity between his FMLA leave and the City's employment actions against him as evidence of pretext. (Doc. 19 at 10.) However, Chavous has not properly developed this argument. He states it once—in a one-sentence heading in his response to the motion for summary judgment. Although "the onus is upon the parties to formulate arguments," *Resol. Tr. Corp.*, 43 F.3d at 599, Chavous does not support his argument with citations to the record or further analysis. *See Higgins*, 194 F.3d at 260 (reasoning that courts may disregard arguments that are "not adequately developed"). Instead, Chavous cites two cases, *Hurlbert* and *Jones*, for the proposition that temporal proximity is evidence of pretext. (Doc. 19 at 10.) But Chavous tactfully omits an important caveat from his quotations. Both cases emphasize that, while temporal proximity may be evidence of pretext, it is "probably insufficient to establish pretext by itself." *Hurlbert*, 439 F.3d at 1298; *Jones*, 854 F.3d at 1276. Unlike in *Hurlbert* and *Jones*, Chavous's evidence of temporal proximity "stand[s] alone." *Hurlbert*, 439 F.3d at 1298. These cases, then, provide no support for Chavous's argument. And Chavous has not argued that temporal proximity alone is sufficient to establish pretext, nor has he pointed to any caselaw holding the same.[5]

Even if this argument was properly presented, it is not compelling. "As discussed, temporal proximity alone is insufficient to create a genuine dispute of material fact about

---

[5] If mere temporal proximity was enough to establish causation and to rebut the employer's asserted rationale, then it would collapse the *McDonnell Douglas* analysis into the prima facie case.

FMLA retaliation" because the evidence shows that City had contemplated disciplining or terminating Chavous for his failure to abide City rules long before his FMLA leave. *Pecora v. ADP, LLC*, 232 F. Supp. 3d 1213, 1224–25 (M.D. Fla. 2017) (Whittemore, J.) Further, approximately a month separates the end of Chavous's FMLA leave and his final termination. That is a period that is as long or longer than the gaps that the Eleventh Circuit in *Hurlbert* and *Jones* said were "probably insufficient to establish pretext by itself." *Hurlbert*, 439 F.3d at 1298 (two weeks); *Jones*, 854 F.3d at 1276 (one month).

In sum, these allegations of pretext—considered alone or jointly—fail to address and rebut the City's reason for disciplining and terminating Chavous. So too, Chavous has failed to "produce sufficient evidence for a factfinder to conclude that [the City's] reason was a pretext," *Chapman*, 229 F.3d at 1031, or that the City "intentionally" retaliated against him, *Strickland*, 239 F.3d at 1207. "[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence" of mere pretext. *See Clark*, 990 F.2d at 1228. Chavous has not done that. Therefore, even assuming that Chavous had stated a prima facie case of FMLA retaliation, the City is entitled to summary judgment on Count II because Chavous has not rebutted the City's asserted non-retaliatory reason.

### C. FWCA Retaliation

Florida law provides that no "employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for

compensation or attempt to claim compensation under the Workers' Compensation Law." § 440.205, Fla. Stat. This section "creates a cause of action for employees who are subject to retaliatory treatment . . . for attempting to claim workers' compensation." *Bifulco v. Patient Bus. & Fin. Servs., Inc.*, 39 So. 3d 1255, 1257 (Fla. 2010).

An identical analysis applies for FMLA and FWCA retaliation claims. *See, e.g., Gillman v. Okaloosa Cnty. Fla.*, 58 F. Supp. 3d 1305, 1312 (N.D. Fla. 2014) (Rodgers, C.J.). The *McDonnell Douglas* framework applies in both contexts. *See Wood v. Calhoun Cnty. Fla.*, 626 F. App'x 954, 955 (11th Cir. 2015) (per curiam) (applying Eleventh Circuit caselaw addressing federal employment discrimination to a FWCA retaliation claim); *Andrews v. Direct Mail Express, Inc.*, 1 So. 3d 1192, 1193 (Fla. 5th DCA 2009). Accordingly, if a plaintiff states a prima facie case of retaliation, the burden shifts to the employer to present a legitimate, non-discriminatory reason. If the employer does so, "the plaintiff must then demonstrate that the reason given was a pretext." *Wood*, 626 F. App'x at 955.

In Count III, Chavous alleges that the City "wrongfully discharge[d]" him for seeking "compensation under [the] Florida Workers' Compensation Law." (Doc. 1 ¶¶ 37–42.) The City argues it is entitled to summary judgment on this Count because Chavous has not established a prima facie case and cannot rebut its non-retaliatory reason. The City

is correct. Because the analysis is largely identical to the FMLA retaliation claim, the Court discusses this claim only briefly.

### i. Chavous Has Not Established a Prima Facie Case of FWCA Retaliation

To state a prima facie case, a plaintiff must establish that (1) he engaged in protected activity, (2) was subject to an adverse employment action, and (3) that there is "a causal link between the protected activity and the adverse employment action." *Salus v. Island Hosp. Fla. Mgmt., Inc.*, 289 So. 3d 926, 929–30 (Fla. 4th DCA 2020) (quoting *Koren v. Sch. Bd. of Miami-Dade Cnty.*, 97 So. 3d 215, 219 (Fla. 2012)).

Chavous easily establishes the first two elements. Following his two injuries, Chavous applied for and received workers' compensation. (Doc. 1 ¶¶ 6, 10, 13, 16.) After those protected acts, the City terminated him. As with the FMLA retaliation claim, the dispute arises over causation. Because Chavous fails to establish that essential element, the City is entitled to summary judgment on Count III.

A "plaintiff must prove causation by showing the protected activity and the adverse action are not completely unrelated." *Ortega v. Eng'g Sys. Tech., Inc.*, 30 So. 3d 525, 529 (Fla. 3d DCA 2010). "But mere temporal proximity, without more, must be 'very close.'" *Thomas*, 506 F.3d at 1364 (quoting *Breeden*, 532 U.S. at 273.) "A three to four month disparity . . . is not enough." *Id.* (citation omitted).

Chavous relies on temporal proximity to establish causation and argues that the period was exceedingly close because he "continued to receive treatment for his work injuries throughout his employment." (Doc. 19 at 7.) Chavous is mistaken.

The relevant period is from when Chavous filed for benefits and the time of his termination. *See Billups v. Emerald Coast Utils. Auth.*, 714 F. App'x 929, 937 (11th Cir. 2017) (measuring proximity from when plaintiff filed for FWCA benefits); *Andrews*, 1 So. 3d at 1194 (same); *Pericich v. Climatrol, Inc.*, 523 So. 2d 684, 685–86 (Fla. 3d DCA 1988) (same); *Eichmuller v. Sarasota Cnty. Gov't*, No. 8:20-cv-47, 2021 WL 75120, at *6 (M.D. Fla. Jan. 8, 2021) (Covington, J.) (same).

Applying this standard, Chavous failed to establish causation through temporal proximity. First, Chavous did not provide the precise day he initially requested workers' compensation benefits for each injury in his Complaint. Nor has he presented evidence of the relevant days in response to the motion for summary judgment. This alone is likely "fatal to his claim." *McGuire v. United Postal Serv., Inc.*, 763 F. App'x 890, 899 (11th Cir. 2019). For example, in *McGuire*, the Eleventh Circuit affirmed summary judgment for the employer on a FWCA retaliation claim because the employee relied on temporal proximity for causation and failed to plead the days he applied for and received workers' compensation benefits. *Id.* (rejecting a continuing benefits theory).

Second, even if failing to identify the days was not fatal, the timeline is not sufficiently compelling to establish causation. Chavous requested worker's compensation following his injuries on November 9, 2017, and May 9, 2018. (Doc. 1 ¶¶ 6, 10, 13, 16.) Chavous was not terminated until August 27, 2018. (Doc. 20 at 9.) Taking every inference in his favor, it is perhaps possible that Chavous waited a few weeks after the second injury to request benefits. But even so, that would still put at least three months between his initial request and his termination. "A three to four month disparity" is not enough to establish causation. *Thomas*, 506 F.3d at 1364.

Finally, even if the gap was smaller, temporal proximity is insufficient to establish causation in this case. *See supra* section III.B. In short, the final termination on August 27, 2018, was a culmination of the reasons articulated for Chavous's discipline from the very first Employee Notice: his refusal to arrive for work when he was scheduled to do so and his failure to follow City procedures to request time off. (Doc. 21 at 3.) Accordingly, Chavous's evidence of temporal proximity "does not suffice to show causation." *Drago*, 453 F.3d at 1308 (holding temporal proximity was insufficient when employer had considered demoting the employee for performance-related reasons at least five months before his FMLA leave). Chavous has not established a prima facie case of FWCA retaliation.

44

### ii.   The City Proffers a Legitimate, Non-retaliatory Reason

Even if Chavous had established a prima facie case, the City has proffered a non-retaliatory reason. The City asserts that it terminated Chavous for his failure to follow the City's protocols for notifying his superiors that he would not be at work for his scheduled shifts. (Doc. 21 at 3.)

### iii.   Chavous Fails to Demonstrate that the City's Reason is Pretextual

Since the City offers a non-retaliatory reason for its decision to terminate Chavous, the burden shifts to him to prove by a preponderance of the evidence that the proffered reason was "merely a pretext for the prohibited, retaliatory decision." *Juback v. Michaels Stores, Inc.*, 696 F. App'x 959, 960 (11th Cir. 2017). A plaintiff "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981) (citing *McDonnell Douglas*, 411 U.S. at 804–05).

Chavous cannot carry that burden. Chavous has not explicitly argued pretext as to Count III. And this Court "declines to fill in the gaps on [his] behalf." *Moore*, 383 F. Supp. 3d at 1312; *Higgins*, 194 F.3d at 260 ("The district court is free to disregard arguments that are not adequately developed . . . .") Of course, Chavous may have intended to apply his pretext arguments from Counts I and II. If so, they would be as unavailing

45

here as they were there. *See Kirkland*, 856 F. App'x at 224 (considering the pretext analysis for FMLA and FWCA retaliation claims together). After full consideration, this Court concludes that Chavous's allegations of pretext, even if properly considered for Count III, fail to supply sufficient evidence from which a reasonable jury could infer pretext. Accordingly, the City is entitled to summary judgment on Count III.

## IV.  CONCLUSION

Drawing all permissible inferences in his favor, Chavous does not establish a prima facie case of FMLA interference, FMLA retaliation, or FWCA retaliation. Chavous also fails to provide sufficient evidence from which a reasonable jury could infer that the City's asserted reason for terminating him was related to his exercise of FMLA rights or was pretext for retaliation on a prohibited basis. In the absence of a genuine dispute of material fact, the City has provided ample evidence and argument that it is entitled to summary judgment. Because there is not "sufficient evidence upon which a reasonable juror could find for the non-moving party," *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003), the Court grants summary judgment on Counts I, II, and III.

Accordingly, the following is **ORDERED**:

1.      The City's Motion for Summary Judgment is **GRANTED**. (Doc. 17.)

2.    The Clerk is directed to **ENTER** judgment in the City's favor on all three

Counts, to **TERMINATE** any pending motions and deadlines, and to

**CLOSE** this case.

**ORDERED** in Tampa, Florida, on December 20, 2021.

Kathryn Kimball Mizelle
United States District Judge